IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JON VERBA and CHRISTINE VERBA,

       Plaintiffs,

v.                                          C.A. NO.

METROPOLITAN LIFE INSURANCE COMPANY,

       Defendant,

**COMPLAINT**

AND NOW comes the Plaintiffs, by and through their attorney, John Newborg, Esquire, and file this Complaint against Metropolitan Life Insurance Company averring as follows:

**PARTIES**

1. Plaintiffs, Jon Verba and Christine Verba, husband and wife, are adult individuals residing at 201 Hazel Street, Zelienople, PA 16063.

2. Plaintiffs were the parents of Andrew Jon Verba, deceased, who died on March 3, 2016.

3. Defendant, The Metropolitan Life Insurance Company (hereinafter "MetLife"), is an insurance company engaged in interstate commerce throughout the United States including the Commonwealth of Pennsylvania with a principal office located at Group Life Claims, P.O. Box 6100, Scranton, PA 18501.

4. At all times material hereto, MetLife was acting through its authorized employees who were acting within the course and scope of their employment.

## JURISDICTION

5. Plaintiffs brings this action against Defendant MetLife under the provisions of the *Employee Retirement Income Security Act* ("ERISA"), 29 U.S.C.A. §1001 *et seq*.

6. Jurisdiction over Defendant in this case is conferred upon this Court pursuant to ERISA, 29 U.S.C.A. §1132 and pursuant to 28 U.S.C.A. §1331.

## FACTS

7. Plaintiffs' son, Andrew Jon Verba, (hereinafter "Andrew") was an employee of Giant Eagle, Inc.

8. Giant Eagle offered its employees Accidental Death Insurance with Defendant MetLife, designated MetLife Group Number 0160660.

9. Andrew participated in the group life insurance program provided by his employer.

10. MetLife stands in a fiduciary relationship to the beneficiaries of policies purchased through Giant Eagle's group life insurance program.

11. Andrew's parents are the recognized beneficiaries under the policy.

12. At the time of Andrew's death on March 2, 2016, Andrew was a covered insured under a MetLife Accidental Death Insurance Policy.

13. Sometime after 1:30 a.m. but before 8:00 a.m. on March 2, 2016, Andrew had driven from the Rivers Casino located on the North Side of the City of Pittsburgh to the driveway of a property located next to the Connoquenessing Creek in Marion Township, Pennsylvania, a distance of 32 miles.

14. Andrew did not know the owners of the property where he parked and he made no contact with the owners after he parked his car.

15. After parking his car, Andrew proceeded to Connoquenessing Creek.

16. Andrew then entered the creek and crossed the creek.

17. The depth of the creek was deep enough so that water was over Andrew's head as he crossed.

18. Andrew then proceeded to walk along the creek a short distance, taking off his wet clothes while he walked.

19. Andrew then stopped walking and sat down.

20. At the time Andrew crossed the creek, the air temperature was in the mid-20's farenheit.

21. After sitting down, Andrew's body temperature then fell to the point that he died from hypothermia.

22. Andrew's family contacted the police during the day on March 2, 2016 and reported Andrew missing when no one could account for Andrew's whereabouts.

23. The police conducted a search and located Andrew's body on March 3, 2016 at approximately 5:30 p.m.

24. When Plaintiff's body was found, the Plaintiff's body showed signs of recent abrasions and bruises.

25. Plaintiffs cannot account for Andrew's behavior as stated above, however, they do not discount the possibility that Andrew may have been attempting to elude a vehicle that was following him with a person or persons in the following vehicle intent upon harming Andrew.

26. Further, Plaintiff's do not discount the possibility that a person or persons intent upon harming Andrew, pushed or forced Andrew into Connoquenessing Creek.

27. On March 4, 2016 an autopsy was performed on the Plaintiff's body.

28. The autopsy found that Plaintiff had 0.5% alcohol in his blood stream and a trace amount of marijuana and a trace amount of benzodiazepines.

29. The autopsy also found that Andrew had 180 nanograms of cocaine per milliliter of blood.

30. The autopsy failed to show any abnormality in the heart or brain.

31. The autopsy showed no recent needle punctures to the skin.

32. The amount of alcohol and drugs found in Andrew at time of the autopsy are insufficient either alone, or in combination, to cause Andrew's death, or even to contribute to the death.

33. Despite the fact that the amount of alcohol and drugs found in Andrew's body, could not, either alone or in combination, cause Andrew's death, or even to contribute to the death, the autopsy report reads:

> Andrew Verba, a 25 year-old white male, died as a result of combined drug poisoning (Cocaine and Ethenol) along with hypothermia.

34. It is believed and averred that the Coroner made the above statement regarding alcohol and cocaine only because alcohol and cocaine were present at the time of the autopsy.

35. Plaintiffs applied for the life insurance proceeds from the above referenced Accidental Death Policy.

36. Defendant denied the Plaintiff's application by letter dated May 18, 2016 on the grounds that Defendant does not have to pay if Andrew's death was "...caused or contributed to by the voluntary intake or use by any means of any drug, medication or sedative, or alcohol in combination with any drug, medication or sedative." Attached hereto and Marked Exhibit "A" is a copy of MetLife's May 18, 2016 letter.

37. Defendant's May 18, 2017 letter relies solely on the statement in the Autopsy Report referenced in Paragraph 20 above to conclude that drugs and alcohol caused or contributed to Andrew's death.

38. Defendant's performed no investigation, when it concluded that the level of drugs and alcohol found at autopsy caused or contributed to Andrew's death.

39. If Defendant had performed even the most cursory investigation, the Defendant would have learned that the amount of alcohol and drugs in Andrew's system could not have caused or contributed to the Plaintiffs' son's death.

40. Defendant failed to take into consideration whether the drug and alcohol readings in the Coroner's Report were consistent with a finding that the Andrew had ingested a fatal, or near fatal, overdose of drugs and alcohol.

41.	Defendant further failed to take into account the temperatures on March 2, 2016 when Andrew entered Connoquenessing Creek.

42.	Defendant further failed to take into account the fact that death from hypothermia under Andrew's circumstances is a certainty within hours of exposure to the water.

43.	Plaintiffs appealed the denial of payment and on September 23, 2016, Plaintiffs, through counsel, submitted to Defendant a report prepared by a toxicology expert explaining that the drug and alcohol readings in the Coroner's Report were inconsistent with a finding that the Andrew had ingested a fatal, or near fatal, overdose of drugs and alcohol. Attached hereto and Marked Exhibit "B" is a copy of the above referenced report.

44.	Despite receipt of the toxicology report, the Defendant, without making any investigation to confirm or refute the findings of the toxicology report, maintains its position that it doesn't have to pay the Plaintiffs the life insurance proceeds.

45.	The Defendant is an entity with a financial interest in whether the Plaintiffs are paid or not, as the payment would be made from Defendant's own assets.

46.	Since Defendant is a financially interested entity, the capricious and arbitrary standard of review of its decision cannot apply.

47.	A de novo review of the decision is applicable to this case and requires a finding that the life insurance proceeds must be paid to the Plaintiffs.

48.     In any event, even a review on a capricious and arbitrary standard, requires a finding that the life insurance proceeds must be paid to the Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendant in the amount of the insurance proceeds, plus pre-judgment interest and attorneys fees.

                                      Respectfully submitted,

By:    S/John Newborg
           John Newborg, Esq.
           Pa. I.D. No. 22276
           225 Ross Street, 4th Floor
           Pittsburgh, PA 15219
           (412) 281-1106
           newborglaw@gmail.com