# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN VERBA and CHRISTINE VERBA,

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

    Defendants.

C.A. NO.: 2:17-cv-769

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1. The documents bates labeled MetLifeAR000001-MetLifeAR000252 (which are attached to the Declaration of Pati Ann Casey as Exhibit A) together constitute a true, correct, and complete copy of the administrative record compiled in connection with plaintiffsø claims for benefits.[1]

### A. The Plan, the Participant, and the Beneficiaries

2. At the time of his death in March 2016, Andrew Verba (hereafter, participant or decedent) was a participant in the Group Life Insurance Plan for Giant Eagle, Inc. and Subsidiaries (hereafter Plan or Plan Document).[2]

3. The Plan provided $75,000 in basic group life insurance (GLI) benefits and $75,000 in accidental death and dismemberment (AD&D) benefits.[3]

---

[1] See Declaration of ___ ¶ 3.
[2] The Plan appears in the administrative record at MetLifeAR000197 to MetLifeAR000252.
[3] MetLifeAR000220, MetLifeAR000221.

4. Defendant Metropolitan Life Insurance Company (MetLife) insured the GLI and AD&D benefits provided by the Plan.[4]

5. The Plan gives MetLife authority to approve or deny claims.[5]

6. The Plan grants MetLife discretionary authority in the performance of its functions as follows:[6]

> **Discretionary Authority of Plan Administrator and Other Plan Fiduciaries**
>
> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

7. Plaintiffs Jon Verba and Christine Verba are the parents of Andrew Verba.

8. Plaintiffs are beneficiaries under participant's Plan.

## B. Circumstances Surrounding the Participant's Death

9. The facts set forth in this section (B) are principally derived from the portions of the administrative record containing the Marion Township Police Department Police Report (hereafter, Police Report), MetLifeAR000036-MetLifeAR000039, and the Report of the Beaver County Coroner's Office (hereafter, Coroner's Report), MetLIfeAR000023-MetLifeAR000035.

10. Andrew, the participant/decedent, lived with his girlfriend, Kayla Hudak, at 216 Pine Street, Zelienople, Pennsylvania.[7]

---

[4] MetLifeAR000249, at "TYPE OF ADMINISTRATION".
[5] MetLifeAR000244, MetLifeAR000245, MetLifeAR000250, MetLifeAR000251.
[6] MetLifeAR000251.
[7] Police Report at MetLifeAR000036, MetLifeAR000037 (listing same home address for each); MetLifeAR000038 ("girlfriend").

11. The participant last spoke to Ms. Hudak at 1:30 **a.m.** on Wednesday, March 2, 2016.[8]

12. At that time the participant allegedly requested use of Ms. Hudak's car, purportedly for the purpose of visiting a Pittsburgh casino.[9]

13. Later that same morning (March 2), at 8 a.m., a resident of 123 Veka Drive, Fombell, Pennsylvania, called the Marion Township police to report that an unknown car was illegally parked in her driveway.[10]

14. The police determined the car belonged to Ms. Hudak.[11]

15. When the police contacted Ms. Hudak, she told them her car had been stolen; however, the police later learned that she lied to them (apparently, she did not want to get the decedent in trouble because his driver's license had been suspended).[12]

16. The local police and fire department, with assistance from the Pennsylvania State Police, found the decedent's body the next day, March 3.[13]

17. The police and the Beaver County coroner conducted an investigation at the scene. They offered the view that in the early morning hours of March 2, the decedent entered the Connoquenessing Creek where it runs behind 123 Veka Drive, exited on the other side, and proceeded to strip off his jacket and other clothing except for his pants, which were found down below his knees.[14]

---

[8] Police Report at MetLifeAR000038 ("0130 hours").
[9] Police Report at MetLifeAR000038.
[10] Police Report at MetLifeAR000037.
[11] Police Report at MetLifeAR000037.
[12] Police Report at MetLifeAR000038.
[13] Police Report at MetLifeAR000038-39.
[14] Police Report at MetLifeAR000039.

18. The coroner took possession of the decedent's body. He later turned over to police a crack pipe and two white rocks that he found in the decedent's clothing.[15]

19. The police field tested the white rocks and determined they tested positive for cocaine.[16]

20. A forensic pathologist in the Beaver County Coroner's Office conducted an autopsy.[17]

21. Page one of the Coroner's Report states in part as follows:[18]

    I. POST MORTEM TOXICOLOGY IS POSITIVE FOR:
        A. Cocaine: 180 ng/ml in the blood; present in the urine
            1. Benzoylecgonine: 770 ng/ml in the blood
            2. Cocaethylene: 91 ng/ml in the blood
        B. Ethanol: 0.050% in the blood
        C. Benzodiazepines: present in the urine
        D. Cannabinoids: present in the urine

    II. POSSIBLE HYPOTHERMIA
        …

22. Benzoylecgonine (listed in (A)(1), above) is a metabolite that is created only when individuals use cocaine.[19]

23. Cocaethylene (listed in (A)(2), above) is a metabolite that is created only when individuals concurrently consume alcohol and cocaine.[20]

---

[15] Police Report at MetLifeAR000039.
[16] Police Report at MetLifeAR000039.
[17] *See* Coroner's Report, MetLifeAR00023 to MetLifeAR000035.
[18] Coroner's Report at MetLifeAR000023.
[19] *See, e.g., Com. v. Peck*, No. 86 MDA 2014, 2014 Pa. Super. Unpub. LEXIS 1700, *3 n.7 (Pa. Super. Aug. 18, 2014).

24. The Forensic Pathologist opined that the participant "died as a result of combined drug poisoning (Cocaine and Ethanol) along with hypothermia."[21]

25. The Death Certificate lists "Combined Drug Poisoning" as the "immediate" cause of death.[22]

26. The Police Report identifies the "Number of Offenders [as] 0"; and explains that state and local police officers investigated but found there were "no signs of any struggle" and "no signs of criminal activity".[23]

**C. The Benefit Claims and Appeals**

27. Plaintiffs-beneficiaries submitted claims for GLI and AD&D benefits.[24]

28. MetLife paid the $75,000 in GLI benefits to the beneficiaries.[25]

29. The Plan Document contains the following provisions:

[Plan Document at MetLifeAR000225]:

**Proof** means Written evidence satisfactory to Us that a person has satisfied the conditions and requirements for any benefit described in this certificate. When a claim is made for any benefit described in this certificate, Proof must establish:

…the nature and extent of the loss or condition;

…Our obligation to pay the claim; and

…the claimant's right to receive payment.

Proof must be provided at the claimant's expense.

---

[20] *See*, *e.g.*, *Com. v. Peck*, No. 86 MDA 2014, 2014 Pa. Super. Unpub. LEXIS 1700, *3 n.7 (Pa. Super. Aug. 18, 2014).

[21] Coroner Report at MetLifeAR000023.

[22] MetLifeAR000022.

[23] See Police Report at MetLifeAR000036, MetLifeAR000038, MetLifeAR000039.

[24] MetLifeAR000092 to MetLifeAR000100.

[25] MetLifeAR000167 to MetLifeAR000170.

\*\*\*

[Plan Document at MetLifeAR000239]:

**ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE**

If You sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss described in the SCHEDULE OF BENEFITS, Proof of the accidental injury and Covered Loss must be sent to Us. When We receive such Proof We will review the claim and, if We approve it, will pay the insurance in effect on the date of the injury.

**Direct and Sole Cause** means that the Covered Loss was a direct result of the accidental injury, independent of other causes.

We will deem a loss to be the direct result of an accidental injury if it results from unavoidable exposure to the elements and such exposure was a direct result of an accident.

\*\*\*

[Plan Document at MetLifeAR000239, MetLifeAR000240]:

**EXCLUSIONS** (See notice page for residents of Missouri)

We will not pay benefits under this section for any loss caused or contributed to byí .

8. the voluntary intake or use by any means of:

- É any drug, medication or sedative, unless it is:
    - É taken or used as prescribed by a Physician; or
    - É an "over the counter" drug, medication or sedative taken as directed;
- É alcohol in combination with any drug, medication, or sedative; or
- É poison, gas, or fumes; or

\*\*\*

30. Following notice of the participant's death, MetLife received and/or secured claim forms, the obituary, the Police Report, the Coroner's Report, and the death certificate.[26]

31. By letter dated May 18, 2016, MetLife explained why it was denying AD&D benefits and advised plaintiffs they had 60 days to appeal the decision.[27]

32. At or around this time, plaintiffs hired separate estate and litigation attorneys to assist them with their claim.[28]

33. On or about September 23, 2016, the litigation attorney, Charles Katz, Esq., submitted a letter from a physician, Dr. John Shane, in support of plaintiffs' appeal.[29]

34. The beneficiaries did not submit any other documents in support of their appeal.

35. By letter dated October 18, 2016, MetLife again denied the claim for AD&D benefits.[30] Excerpts from MetLife's denial letter follow:

> According to our records, the State (sic) of Pennsylvania Certificate of Death lists the immediate cause of [the participant's] death on March 3, 2016 as "Combined Drug Poisoning" due to or as a consequence of "Hypothermia". The Coroner's Report indicates that [the decedent] was found to have cocaine and alcohol in his blood at the time of death leading to his prolonged exposure to a cold environment. As the loss was caused by and contributed to by the use of a drug that cannot be prescribed, taken in conjunction with alcohol, the loss is not eligible as Accidental under the Plan terms. Consequently, your client's claim was denied by letter dated May 18, 2016.
>
> … .

---

[26] MetLifeAR000007; MetLifeAR00022 to MetLifeAR000039.

[27] MetLifeAR000056 to MetLifeAR000059.

[28] *See* MetLifeAR000060 (estate lawyer); MetLifeAR000110 (administrative appeal lawyer).

[29] MetLifeAR000110 to MetLifeAR000112 (September 23, 2016 letter from Charles S. Katz, Esq., enclosing July 15, 2016 letter from John J. Shane, M.D).

[30] MetLifeAR0000117 to MetLifeAR000119.

As noted above and in the initial denial letter, [the participant's] Death Certificate states the immediate cause of death was combined drug poisoning. The claim file substantiates that finding. Specifically, the Beaver County Coroner's Autopsy Report and Postmortem Toxicological findings support the conclusion that the above-referenced exclusion applies. The latter identifies positive findings in the blood for Cocaine in the amount of 180 ng/ml and Ethanol in the amount of .050%. Additionally, the Forensic Pathologist concluded the "[the participant] died as a result of combined drug poisoning (Cocaine and Ethanol) along with hypothermia."

Although Hypothermia is noted on the death certificate and associated autopsy reports, it was not the sole cause of the death as you contend. The records in the claim file, as referenced in this letter, support that the combined drug poisoning was the immediate cause of death, specifically the combination of cocaine and alcohol. Therefore, the Plan exclusion noted above does apply.

…

We have now received a second appeal letter from you dated September 23, 2016. This letter was accompanied by a letter from John J. Shane, M.D.

… .

As noted in the denial, in the uphold of the denial, and as referenced above, the Death Certificate lists "Drug Poisoning" as the immediate cause of death. The Forensic Pathologist, who examined the body of the decedent, concluded: "[the participant]… died as a result of combined drug poisoning (Cocaine and Ethanol) along with hypothermia".

… .

As stated in the Plan and as referenced above, Accidental Death and Dismemberment benefits are not payable if the intake of drugs and alcohol, or the intake of any drugs (not taken as prescribed) caused or contributed to the passing. Based on the Forensic Pathologist's findings, both drugs and alcohol played a role in the passing of the decedent. Therefore, the benefit is not payable based on the above-referenced Plan exclusion. Both the Death Certificate for Mr. Verba and the Autopsy Report, state that drugs and alcohol caused and/or contributed to the passing of the decedent. The presence of the alcohol and drugs is also confirmed in the toxicology report.

**D. Rebuttal Facts**

36. Plaintiffs' consultant, Dr. Shane, speculates that plaintiff traveled to Pittsburgh and, in order to flee assailants he allegedly encountered there, drove to 123 Veka Drive, Fombell, Pennsylvania.[31]

37. Solely for purposes of rebutting this excludable and unpersuasive speculation, defendants respectfully request that this Honorable Court take judicial notice of the following facts from Google Maps:[32]

> 37a. According to Google Maps it is 1.9 miles and five (5) minutes' driving time from the decedent's/Ms. Hudak's home at 216 Pine Street, Zelienople, Pennsylvania, to 123 Veka Drive, Fombell, Pennsylvania, the residence where he left Ms. Hudak's car.[33]
>
> 37b. According to Google Maps-Satellite View, Veka Drive is a dead-end street that principally serves the Veka, Inc. manufacturing plant.[34]

---

[31] MetLifeAR000112.

[32] Courts routinely take judicial notice of geographic distances and layouts, particularly those supplied by Google Maps. *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 546 (3d Cir. 2012) (layout of retail store and location of exits); *United States v. Leveto*, 540 F.3d 200, 206 n.2 (3d Cir. 2008) (miles between courthouses); *Trs. of the N.J. B.A.C. Health Fund v. Infrastructure LLC*, No. 14-2614 (RBK/JS), 2015 U.S. Dist. LEXIS 88902, at *17 n.3 (D.N.J. June 29, 2015) ("A court may take judicial notice of geographic distances. The distance calculated supra was calculated using Google Maps (www.google.com/maps), which is a common practice.") (citations omitted).

[33] ___https://www.google.com/maps/dir/216+Pine+St,+Zelienople,+PA+16063/123+Veka+Dr,+Fombell,+PA+16123/@40.7930362,-80.1694454,15z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x88347e8891dab8d7:0xe9568cb372a79e39!2m2!1d-80.1464168!2d40.7897697!1m5!1m1!1s0x88347eba22231b53:0xe7493c5e67b2c059!2m2!1d-80.174852!2d40.796044!3e0

[34] ___https://www.google.com/maps/place/123+Veka+Dr,+Fombell,+PA+16123/@40.7960468,-80.1763544,400m/data=!3m1!1e3!4m5!3m4!1s0x88347eba22231b53:0xe7493c5e67b2c059!8m2!3d40.796044!4d-80.174852

37c. According to Google Maps-Satellite View, the residence where the Ms. Hudek's car was discovered, 123 Veka Drive, is located at the end of Veka Drive and is the only residence in the vicinity.[35]

REGER RIZZO & DARNALL LLP

Date: January 19, 2018

By: /s/ *James L. Griffith, Jr.*
James L. Griffith, Jr., Esquire
Attorney I.D. #74126
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA 19104-2899
(215) 495-6500
jgriffith@regerlaw.com

Attorney for Defendant, Metropolitan Life Insurance Company

---

[35] https://www.google.com/maps/place/123+Veka+Dr,+Fombell,+PA+16123/@40.7960468,-80.1763544,400m/data=!3m1!1e3!4m5!3m4!1s0x88347eba22231b53:0xe7493c5e67b2c059!8m2!3d40.796044!4d-80.174852