IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JON VERBA and CHRISTINE VERBA,

    Plaintiffs,

v.                                      C.A. NO. 17-769

METROPOLITAN LIFE INSURANCE COMPANY,

    Defendant,

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

And Now come the Plaintiffs, by and through their attorney, John Newborg, Esquire, and files this Brief in Support of Plaintiffs' Motion for Summary Judgment as follows:

**I.    FACTS**

Plaintiffs are the beneficiaries of a group accidental death policy provided to Plaintiffs' son, Andrew Verba, through Andrew Verba's employer, Giant Eagle. Defendant Metropolitan Life Insurance Company ("hereinafter "MetLife") issued the subject policy. MetLife is an entity with a financial interest in whether the Plaintiffs are paid or not, as the payment would be made from MetLife's own assets. (See Answer to Complaint ¶ 45 Doc. 11)

Andrew Verba died accidentally on March 2, 2016 after getting drenched when he crossed a creek on foot. Plaintiffs were the beneficiaries under the above referenced policy. The Plaintiffs applied for the proceeds under the policy. MetLife denied the Plaintiffs' application on the grounds the policy excluded coverage where the death was "caused or contributed by:

1

The voluntary intake or use by any means of

- any drug, medication or sedative [or]
- alcohol in combination with any drug, medication or sedative."

(Admin. Record. Doc. 19-2, p. 59)[1]

MetLife relied solely on the statement in the autopsy report that Andrew Verba died from "combined drug poisoning (Cocaine and Ethanol) along with hypothermia." (Admin. Record. Doc. 19-2, pp. 26-38) to apply the above exclusion. The amount of Cocaine and Ethanol found in the Andrew Verba's blood were insignificant amounts, specifically, .05% alcohol and .00000018 grams of Cocaine.

Contained in the administrative record is a report submitted by John Shane, M.D., Pathologist, (Admin. Record 19-2, pp. 114-115) that states unequivocally that the tiny amount of alcohol and cocaine in Andrew Verba's body could not have contributed to Andrew Verba's death. The report of Dr. Shane reads:

> I **challenge** any toxicologist to assign these toxicological values in this case **as even remotely fatal.** [emphasis added]

The Administrative Record reflects that MetLife did not even apply a common sense analysis to determine if the amount of alcohol and cocaine found in Andrew Verba could have contributed to his death. MetLife never sought an independent assessment from an expert of its choosing to determine if the alcohol and cocaine in Andrew Verba could have conceivably contributing to his death.

---

[1] MetLife filed the Administrative Record at Document 19-2. Rather than resubmit the Administrative Record, Plaintiff will cite to Document 19-2 when citing the Administrative Record.

**ARGUMENT**

I. **TAKING INTO ACCOUNT METLIFE'S INHERENT CONFLICT OF INTEREST, WHETHER METLIFE'S DENIAL OF PLAINTIFFS' APPLICATION WAS ARBITRARY AND CAPRICIOUS?**

The parties in this case are calling upon the District Court to review the propriety of a decision by an insurance company to deny the payment of the proceeds of a life insurance policy. The Court's review is controlled by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. S. §1001 *et seq.* Section 1132(a)(1)(B) of ERISA provides the Plaintiffs a right of action to recover benefits due to them under the terms of their son's benefit plan. To prevail on a claim under §1132(a)(1)(B), the plaintiffs must demonstrate that they have "a right to benefits that is legally enforceable against the plan, and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.,* 679 F. 3d 116, 120 (3d Cir. 2012)

In this case, MetLIfe is acting as the plan administrator. However, the plan assets subject to administration belong to MetLife. Thus, MetLife has an inherent conflict of interest that the Court must take into account in rendering its decision. While the broad standard the Court should apply in this case is whether MetLife acted arbitrarily and capriciously in denying the Plaintiffs' claim, any application of the arbitrary and capricious standard must take into account conflicts of interest held by the decision- maker. A conflict of interest exists where a defendant decision maker also funds the plan from which benefits will be paid. See *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); *Metropolitan Life Ins. Co. v. Glenn*, 549 U.S. 1337, 127 S. Ct. 2087, 167 L. Ed. 2d 762 (2008). Where the same entity "both funds and administers the plan . . . it incurs a direct expense as a result of the allowance of benefits, and it benefits

directly from the denial or discontinuance of benefits." See also: *Davies v. First Reliance Std. Life Ins. Co.,* 2017 U.S. App. LEXIS 22656 (3rd Cir. 2017); *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522 3rd Cir. 2009).

In preparing this argument counsel noted that an antonym or opposite word to arbitrary is the word logical. So, another way to analyze this case is for the Court to decide if MetLife's decision-making process was logical. If MetLIfe was acting objectively as a plan administrator, as opposed to acting in its self-interest, by no stretch of the imagination can the MetLife decision-making process be viewed as logical.

MetLife is given mathematical values for the alcohol and cocaine in Jon Verba's system. MetLife is also given an expert report that states that those mathematical values could not have conceivably contributed to the death of Jon Verba. What would be a logical non-arbitrary process for arriving at the truth when provided this information? Perhaps one would take the precise mathematical values of the substances and apply common sense to see if the values in the report represent potentially lethal doses of the substances.

First, .05 % alcohol is not even over the legal limit for driving. 18 P.S. § 3802 (a)(2) reads:

> (2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

So, if the Plaintiff were stopped by the police and tested for alcohol on the night of his death, the Plaintiff would still be permitted to drive a car. Yet, the coroner says the amount of alcohol in the Plaintiff's system was practically lethal. This makes absolutely no sense.

With respect to the cocaine, people are not as familiar with cocaine dosages as they are with alcohol. However, the Plaintiff was found to have 180 ng of cocaine in his system. One nanogram is one billionth of a gram. I am going to repeat this last sentence: ***a nanogram is one billionth of a gram.*** While there is no requirement that a claims handler perform some elaborate independent research, certainly the law requires a claims handler to utilize math in his or her decision making process. A billionth of a gram would not even be visible. Adding 179 more billionths of a gram to the single billionth of a gram isn't going to make a great deal of difference. A simple mathematical calculation demonstrates the amount of cocaine in the Plaintiff's system would be infinitesimal.

Plaintiffs, obviously, are not condoning the use of cocaine. Condemning the use of cocaine is not the point. The point is that a simple common sense analysis by a claims investigator seeking the truth, rather than an excuse for denying payment, would show that .00000018 grams of cocaine could not have conceivably contributed to the Plaintiff's death.[2]

Finally, setting aside the idea of the claims handler doing his or her own research, a claims handler seeking the truth, as opposed to looking for an excuse to deny the claim, should have credited the Plaintiffs' expert report which was much more detailed with respect to the alcohol and cocaine issue, as compared to the autopsy report. After concluding that the alcohol and cocaine could not have contributed to Plaintiff's death, the Plaintiff's expert goes so far as to say:

---

[2] Plaintiff understands that the current law does not place an obligation on a claims handler to perform an independent investigation. However, certainly this does not go so far to mean that claims handler has no obligation to look up medical terms, for instance, or determine the meaning of values that are stated in blood work or a urinalysis.

5

> I ***challenge*** any toxicologist to assign these toxicological values
> in this case ***as even remotely fatal.*** [emphasis added]

Yet, despite this bold challenge, the claims handler decides the case as if no evidence was presented showing that the alcohol and cocaine could not have contributed to the death of Andrew Verba. The law is clear that a "plan administrator may not arbitrarily refuse to credit a claimant's reliable evidence." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Further, under the circumstances of this case, particularly due to the taint of conflict of interest, at the minimum the claims handler should have retained an independent expert to provide an opinion regarding the assertions of the Plaintiff's expert. If MetLife retained an independent expert, MetLIfe would not have denied the Plaintiff's application, as no honest independent expert in the world would find that alcohol and/or cocaine contributed in any way to Andrew Verba's death.

Plaintiff understands that there is no legal requirement for Metlife to retain an independent expert. However, as stated in *Bechter v. Fed. Express Corp. Long Term Disability Plan*, 2015 U.S. Dist. LEXIS 41290 (E. D. Pa. 2015),

> ...courts have concluded that "a decision to forego an IME and conduct
> only a paper review, while not rendering a denial of benefits arbitrary
> *per se*, ***is another factor to consider*** in the Court's overall assessment
> of the reasonableness of the administrator's decision-making process.
> *Schwarzwaelder v. Merrill Lynch & Co., Inc.*, 606 F. Supp. 2d 546, 563
> (W.D. Pa. 2009) [emphasis added]

MetLife's arbitrarily ignoring the Plaintiff's expert report, MetLife's failure to apply a common sense interpretation to the mathematical values in the autopsy report, and MetLife's failure to obtain an independent expert opinion in arriving at its decision, are not logical choices when searching for the answer to the question of what part, if any, did

alcohol and cocaine contribute to Andrew Verba's death.  It is true that the autopsy report says " Andrew Verba, a 25 year-old white male, died as a result of combined drug poisoning (Cocaine and Ethenol) along with hypothermia."  However, the statement is false, and if MetLife had not handled the Plaintiffs' claim in an arbitrary and capricious manner, MetLife would know the statement was false.   If the Court does not overturn the decision of MetLife in this case, the Court is condoning a decision making process that values falsehood over truth.

Stated another way, the plan administrator's decision must be set aside if the decision "is clearly not supported by the evidence in the record." *Smathers v. Multi Tools*, 298 F. 3d 191, 199-200 (3d Cir. 2002); see also *Boyles v. Am. Heritage Life Ins. Co.,* 226 F. Supp 3d. 497, 502 (D.C.  Western Pa.  2016) where the Court states that an administrator's decision cannot be sustained if the decision is without reason or the decision is unsupported by substantial evidence.

The objective evidence in the record does not support the decision of MetLife.  A blind reliance on a false statement in the autopsy report cannot save the decision.  What if the coroner said the deceased died from an overdose of heroin, but the deceased had no heroin in his system? Does that mean that even though the Plaintiff had no heroin in his system, he still nevertheless died from an overdose of heroin?  The only basis for MetLife's decision to deny the Plaintiffs' claim is a blind reliance on a conclusory false statement in an autopsy report.  Everything else in the record is ignored.  The denial of Plaintiffs' claim is clearly arbitrary and capricious.

Respectfully submitted


By:     s/John Newborg
        John Newborg, Esq.
        Pa. I.D. No. 22276
        225 Ross Street, 4th Floor
        Pittsburgh, PA 15219
        newborglaw@gmail.com